C. J. Tower & Sons *v.* United States (No. 5110)*

United States Court of Customs and Patent Appeals, May 16, 1963

*Barnes, Richardson & Colburn (Joseph Schwartz*, of counsel) for appellant. *John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section (*Samuel D. Spector*, of counsel) for the United States.

[Oral argument April 1, 1963, by Mr. Schwartz and Mr. Spector]

Before Worley, Chief Judge, and Rich, Martin, Smith, and Almond, Jr., Associate Judges

Rich, Judge, delivered the opinion of the court:

This is a reappraisement ▆ appeal from the judgment of the United States Customs Court, Second Division, Appellate Term, A.R.D. 139, *reversing* the judgment of the single judge trial court, Reap. Dec. 9579 which held, on rehearing from Reap. Dec. 9092, that the importer had overcome the presumption of correctness attaching to the values found by the appraiser by (1) proving them incorrect and (2) proving alternative values to be correct.

The case in which this appeal is taken is a consolidation of 174 appeals for reappraisement relating to importations of rubber-tipped bobby pins, said to be patented in the United States, Great Britain and Canada. The bobby pins as imported are attached to cards containing either 18, 24, 54 or 72 pins. The goods were imported from Canada between March 1952 and December 1954 through the port of Niagara Falls, New York, and appraised on the basis of the export value, as

---

*C.A.D. 824.

defined in section 402(d),[1] Tariff Act of 1930, of "similar" merchandise, viz, nonrubber-tipped bobby pins. The importer contends that the goods should be appraised on the basis of cost of production, as defined in section 402(f), Tariff Act of 1930.

The trial court found, this finding being undisputed, that "The parties have agreed that there was no foreign value applicable to the merchandise at bar," as defined in section 402(c), Tariff Act of 1930.

The trial court also found that there was no export value for "such" merchandise under section 402(d). The Customs Court, on appeal, agreed with this finding, saying:

> With respect to export value for "such" merchandise, we find the record amply supports the fact that the merchandise is not freely offered for sale to all purchasers for export to the United States. The fact that the merchandise was sold only to one wholesaler in each district and the restriction with respect to the ultimate retail selling price, which restriction we find to have existed, precludes a finding of export value for "such" merchandise.

It was on the question of the existence of an export value for "similar" merchandise [2] that the trial court and the Appellate Term of the Customs Court disagreed, the crux of the matter being whether any "similar" merchandise existed, the export value of which could be applied.

The position of the trial court is shown by the following portions of its original opinion, not altered on rehearing:

> On the question of whether merchandise similar to that here involved was freely offered for sale for exportation to the United States at or about the times of exportation of the merchandise here in question, plaintiff contends that inasmuch as the rubber-tipped bobby pins were patented in Canada and the United States by the manufacturer of the instant merchandise, and as no other manufacturer in Canada made rubber-tipped bobby pins, there was no "similar merchandise," within the meaning of that term as used in the export value statute, offered for sale in Canada, and, consequently, no export value based upon the value of similar merchandise, existed.
>
> In the brief filed in its behalf, counsel for the defendant urges that all bobby pins are "similar" to each other, whether rubber-tipped or not * * *.
>
> *     *     *     *     *     *     *
>
> The very fact that the involved bobby pin was the subject of patents issued to the inventor establishes that it possessed elements of invention, novelty, and utility, which distinguished it from other bobby pins not possessing the patented features. *Whether or not that fact alone would bar a finding that other bobby pins were similar thereto [it] is, however, unnecessary to determine, inasmuch*

---

[1] At the times of importation here involved "export value" was defined in section 402(d) of the Tariff Act of 1930 as follows:

> The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which *such or similar merchandise* is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis ours.]

[2] See note 1, *supra*.

*as it clearly appears that, in at least two of the many factors which may be considered as criteria of similarity for tariff purposes, to wit, materials and use (Meadows, Wye & Co. (Inc.) et al. v. United States, 17 CCPA (Customs) 36, T.D. 43324), the involved bobby pins differed from ordinary bobby pins to such an extent as to establish that they are not "similar merchandise" within the meaning of that term as used in the valuation statute. Accordingly, I find that no export value for merchandise similar to that at bar existed within the definition of export value as given in the statute.* [Emphasis ours.]

The Appellate Term, in reversing, said:

The fact that the involved merchandise is the subject of a patent, would indicate for patent purposes at least, that the articles possess elements of invention, novelty, and utility. We are of the opinion that these features which are essential to the issuance of a patent do not *ipso facto* negate similarity for the determination of customs valuation.

We agree with this statement. It seems probable that the trial judge felt the same way, since he declined to rest his judgment on the existence of the patent.[3]

Replying on our opinion in *H. J. Heinz Company* v. *United States,* 43 CCPA 128, C.A.D. 619, the Appellate Term also said:

* * * the term "similar," as used in section 402 of the Tariff Act of 1930, relates to merchandise of approximately the same price, approximately the same materials, and [which] is adapted to the same use, and may be substituted therefor.

As to similarity of use, the Appellate Term said "both rubber-tipped bobby pins and nonrubber-tipped bobby pins are adapted to the same use, i.e., to keep women's hair in place."

As to similarity of materials the court said, "The materials used for both types of bobby pins are substantially the same. This is borne out by the cost-of-production figures submitted by appellee [appellant here] * * *." After considering these figures, which related *only* to the cost of *rubber-tipped* bobby pins, the court concluded that the only difference lay in

* * * a cost of 10 cents for the rubber in the production of 1 gross of cards containing 18 pins each, or the equivalent of approximately 0.004 of a cent per pin. Based upon an inconsequential difference, we would not hesitate to consider the involved bobby pins to be of approximately the same material.

Finally, as to similarity of cost between rubber-tipped and nonrubber-tipped bobby pins, the Customs Court said:

The record is barren of any evidence of the market value or price of nonrubber-tipped bobby pins or whether such merchandise was or was not freely offered for sale, etc. * * *. This evidence being lacking, appellee has, in our opinion failed to negate the value found by the appraiser and has, accordingly, failed to overcome the presumption of correctness attaching to said finding.

---

[3] The law as we see it does not close its eyes to the possibility of similarity between different types of merchandise merely because one type may be the subject of a patent. See *United States* v. *A. N. Deringer, Inc.,* 42 Cust. Ct. 711, A.R.D. 102, wherein the court said "A patented feature does not, of course, bar the possibility that similar merchandise may exist, within the purview of section 402."

To summarize the situation, in the trial court the plaintiff established to the court's satisfaction that there was no "similar" merchandise and, therefore, plaintiff was under no duty to establish market value of *plain* bobby pins which were held not to be "similar"; the Appellate Term, however, found plain bobby pins to be "similar" to the imported rubber-tipped pins and held against plaintiff because there was no evidence of the market value of plain bobby pins which would negate the value thereof found by the appraiser.

We are not persuaded by the reasoning of the Appellate Term that ordinary, nonrubber-tipped bobby pins are "similar" to the merchandise at bar under section 402(d). The first point made by the court below was that plain and rubber-tipped bobby pins "are adapted to the same use, i.e., to keep women's hair in place." We note that on this theory rubber-tipped bobby pins could be said to be "similar" to common spring hair clips as well as plain old fashioned hair pins, barrettes, etc. Appellant's counsel appropriately noted at oral argument before us that

Rubber-tipped bobby pins, I submit * * * can only be said in the broadest possible sense to have the same use as nonrubber-tipped ones. On this theory they would be similar to the ordinary, flat, uncorrugated hair pin * * *. They are similar only in the broadest possible sense.

It seems to us that the question of similarity of ultimate use must be carefully considered in the light of decided cases. A case in point is *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 CCPA 224, C.A.D. 21, wherein the court, after stating "It is conceded that 'Standard' and 'Portion' Roquefort cheese are made of the same materials," said "In a broad sense, of course, the ultimate use of both types may be said to be the same. They are both eaten as Roquefort cheese." The court concluded, however, that the cheeses were not "similar" because the process which produced the "Portion" Roquefort enabled it to be "smoothly cut." See in this regard also, *United States* v. *Decal Products Co., et al.*, 5 Cust. Ct. 537, Reap. Dec. 5017, wherein the court failed to find similarity "even though the ultimate purpose of both types [of decalcomanias] is to transfer decorative designs to china, pottery, and similar wares." In *United States* v. *F. Vietor & Achelis*, 17 CCPA 412, T.D. 43864, this court found imported ribbon having artificial silk edges not "similar" to ribbon having silk or cotton edges. The court was not persuaded by a consideration that the two types of ribbon had similar ultimate uses; it stated in this regard:

Suppose, for example, that two automobiles are imported into the United States. One is worth $5,000 and the other $1,000. They are used for similar purposes, but surely no one would have the temerity to suggest that they were "similar" for appraisement purposes.

80

Finally in this regard we note that in *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T.D. 43089, and *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837, the concept of similarity of use, as it related to imported merchandise and allegedly "similar" merchandise, was inextricably related to a determination of whether the two types of merchandise could "perform the same functions."

In determining similarity of *use*, therefore, we think it best to consider first what uses or functions are possessed by the imported merchandise; then if [no]* other merchandise can be found which will perform similar uses or functions in all respects, similarity under the statute may in part be based thereon. We are unable, however, to see the soundness, for appraisement purposes, of picking a *single* use or function, such as keeping hair in place, of several possessed by imported merchandise, and labeling as "similar" to such merchandise other goods which also possess that one use or function.

*\* probably should be omitted.*

In the case at bar, it is clear that nonrubber-tipped bobby pins cannot perform all the same functions as rubber-tipped bobby pins. The raison d'être for the rubber tips on the imported bobby pins is shown by the record to be the elimination of a disadvantage of plain bobby pins called "bobby pin notch teeth." Mr. Samuel Tick, president of the Barret Bob Pin Company, Ltd., Toronto, manufacturer of the merchandise at bar, described the cause and avoidance of this malady as follows:

Well, prior to the invention, which I hold a patent on this, the bobby pin was chopped off in a machine and there was a burr left on the end. I'd say 99 times out of 100 a woman would hold her hair in her hand and open the bobby pin with her teeth, thereby putting a notch in her tooth which was called by the dentists as "bobby pin notch teeth." And in order to avoid that, why, I designed a different type of bobby pin, or a bobby pin and put a rubber coating or similar coating on it to avoid getting the teeth notched.

We turn next to the comparison made by the Appellate Term of the *materials used* on rubber-tipped and on nonrubber-tipped bobby pins, the second "basic factor" considered on the similarity issue. The court found that "The materials for both types of bobby pins are substantially the same." It did not, however, on what we think was an improper assumption, namely, that its finding is "borne out" by the "cost-of-production figures." "Based upon" what the Appellate Term considered to be an "inconsequential difference" between appellant's cost of producing rubber-tipped and nonrubber-tipped bobby pins,[4] the court found that "we would not hesitate to consider the

---

[4] Actually the "0.004 of a cent per pin" cost of the rubber on an 18-pin card, as found below, is a very significant 7.8% of the total *material* cost of such pins. Using the 72-pin card cost figures it amounts to 10.8% of such cost. The actual increase in cost of production due to the use of rubber on bobby pins would probably be much higher than these percentages indicate inasmuch as labor and other manufacturing costs would necessarily be attributable to placing the rubber on the pins.

involved [rubber-tipped] bobby pins to be of approximately the same material [as nonrubber-tipped bobby pins]." The reasoning of the court seems to have been that different merchandise may be considered to be of the same or similar materials for appraisement purposes merely by finding that the only difference resides in the addition of an allegedly "inconsequential" amount of a particular material.[5] We believe that in this case such cost differentials, or the lack of them, are not in and of themselves controlling factors in determining similarity for appraisement purposes—they serve merely as a warning signal that there *may or may not be* differences in *kind* between the merchandise which would make such merchandise not "similar."

It is clear to us that ▉ if, as in the instant case, a cost differential is due solely to a difference in *kind* between merchandise, even a comparatively "inconsequential" difference, considered merely as *amount* of cost or material, may be an important consideration in a finding of lack of similarity. But an inconsequential amount of rubber has here created a new type of bobby pin, in our judgment, one which is not commercially interchangeable and which performs a new function.

The Appellate Term seemed to find support in law for its position on this point in observing that "The question as to similarity of material has recently been given a much broader interpretation than heretofore in the case of *United States* v. *The Heyman Co., Inc.*," 48 CCPA 13, C.A.D. 755. We cannot agree. In the *Heyman* case istle fiber pads were found to be "similar" to imported henequen fiber pads even though the court acknowledged that the pads "are not identical" and that there was a "price differential" therebetween. We feel that the *Heyman* case directly supports the position we are constrained to take in the instant case. That case clearly indicates that ▉ the overriding consideration in determining similarity, be it merely similarity of materials or overall similarity of merchandise for appraisement purposes, is *commercial interchangeability* rather than considerations of ultimate use or cost of production. The *Kraft Phenix Cheese Corp. et al.* case, supra, is here in point, indicating that even when the "same materials" are used in making different products, similarity need not always be found. See also in this regard, *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 143, C.A.D. 748, involving the commercial interchangeability of "Husqvarna" and "Brno" rifles having, e.g., differently constructed sights and bolt handles.

We think it clear that the imported rubber-tipped bobby pins are not "similar" to nonrubber-tipped bobby pins. Considering the particular functions of the imported rubber-tipped bobby pins which would motivate a purchaser to buy them, at a retail price the record shows to be about *double* that of nonrubber-tipped bobby pins, non-

---

[5] See note 4, *supra*.

rubber-tipped bobby pins cannot "perform the same functions." See the *Scharf Bros.* and *Wecker & Co.* cases, supra. They are therefore clearly not interchangeable, let alone commercially interchangeable, and plain bobby pins are not "similar" merchandise. It is unnecessary therefore, for appellant to offer evidence of the market value or price of plain bobby pins or whether such merchandise was or was not freely offered for sale as required by the Appellate Term.

The judgment of the Customs Court is *reversed* and the case *remanded* for further action not inconsistent with this opinion.