(Reap. Dec. 10086)

D. C. ANDREWS & Co., INC., ET AL. *v*. UNITED STATES

Entry No. 717233, etc.

(Decided October 19, 1961)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

LAWRENCE, Judge: The proper value for duty purposes of certain metal lathes, imported from Germany, forms the subject of the ap-

peals for a reappraisement, enumerated in the schedule attached to and made part of this decision.

The lathes in issue, manufactured in Germany, were exported therefrom between March 1, 1952, and December 20, 1955.

The basis of appraisement was foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938.

It is the contention of plaintiffs that there was no foreign, export, or United States value, as set forth in section 402 (c), (d), or (e) of the Tariff Act of 1930 (19 U.S.C. § 1402 (c), (d), or (e)), or as amended, *supra*, and that cost of production, which is defined in section 402(f) of said act (19 U.S.C. § 1402(f)), is the proper basis of appraisement.

The following facts have been stipulated and agreed to by the parties:

1. That the sole question involved in these appeals is the existence of a foreign value for similar merchandise, manufactured and sold by Meuser & Co. of Frankfurt, Germany, for the period in question, namely, 1952 through 1955.

2. That there is no export value or United States value for such or similar merchandise.

3. That if the court finds that similar merchandise was freely offered for sale for home consumption in Germany to all purchasers during the period in question, then, the appraised values of the merchandise are correct and that they represent such home market value.

4. That if the court finds that such or similar merchandise was not freely offered for sale for home consumption in Germany to all purchasers during the period in question, then, cost of production is the proper basis of appraisement and that such cost of production is as represented by certain agreed amounts.

Apart from the foregoing facts agreed upon by the parties, the record upon which these appeals for a reappraisement have been submitted for decision consists of five reports and one affidavit.

The first in point of time of said reports (exhibit A) deals with an interview had with Miss Hasenfuss, shop manager for Meuser & Co., Frankfurt on the Main, Germany, by the vice consul of the United States, William Arthur Helseth, stationed in that city. On the subject of "FOREIGN VALUE," the following appears:

Such or Similar Merchandise:

The only difference in the merchandise exported to the United States and that freely offered for sale for home consumption in Germany is that the measurements are in inches on the machine for United States exportation whereas the metric system is used on the machines for home consumption. The state-

ment of the manufacturer, showing extent of changes this causes, is enclosed as Exhibit H. Maker stated this caused no difference in the cost of production, and that neither machine was good delivery for the other since a machine in inches would not generally make threads in millimeters and vice versa.

Restrictions:

There are no restrictions of any kind imposed by the manufacturer on the buyers of this merchandise either as to resale or use.

It further appears from said exhibit A that the principal market for such or similar lathes is the factory at Frankfurt and that one machine per order is the usual quantity sold. A trade discount of 10 per centum is given on an order of from 1 to 9 machines and 15 per centum for orders of 10 or more, with a cash discount of 2 per centum freely offered to all buyers. No wholesale dealers exist for this merchandise, and a very small percentage of the machines is sold directly to consumers. The report indicates that the prices and discounts are adhered to in all instances.

From the interview had with Miss Hasenfuss, it was developed that the lathes for home consumption in Germany were gauged for metric system measurement, whereas the machines for exportation to the United States were so manufactured as to produce measurement in inches.

As to the extent of changes necessary in the process of manufacturing lathes for exportation, as compared to those for home consumption, subexhibit H, which accompanied exhibit A, discloses that the machines exported to the United States are subject to the following changes: "The leadscrew as well as the screw for the support and compound rest have to be provided for inch system. In conformity to this, the set of gears in the gear box and the apron nut have also to be changed." As indicated, *supra*, the manufacturing changes referred to caused no difference in the cost of production.

It would appear from the foregoing that there existed a statutory foreign value for the imported merchandise provided the metal lathes in issue are found to be similar to those offered for sale and sold for home consumption in Germany.

The metal lathes in question have been shown to be of the same construction, to perform the same function, and are on a par, as to cost of manufacture, to those offered for sale and sold in the country of exportation, the only difference being that the imported metal lathes are gauged to measure in inches, whereas those for home consumption provide measurement in the metric system. Does this sole difference bar a finding of similarity for valuation purposes? The court thinks not in view of the construction given to the term "similar" by this and the appellate court.

Reference is made in the brief of defendant to the case of *United States* v. *Thomas & Co.* (*Dehler-Signoret Corp.*), 21 C.C.P.A. (Customs) 254, T.D. 46788, wherein the question of similarity of certain paper tubes and bobbins exported to the United States, as compared to those for home consumption, was in issue. The paper tubes and bobbins were used to hold yarn during the spinning, twisting, or warping processes in the textile industry. The taper, exact length, corrugations, number, and location of these tubes and bobbins depended upon the requirements of the textile manufacturer. They varied in diameter of the head or barrel. The articles imported were claimed to be dissimilar because they were not commercially interchangeable and would not fit spindles used in Czechoslovakia, the country of exportation. Regardless of said variations, there was no difference in the price.

The court, in the *Thomas* case, *supra*, affirmed the judgment of the court below in holding that the paper tubes and bobbins exported to the United States were similar to those sold in the home market. In reaching that conclusion, the appellate court quoted with apparent approval from the decision of an appellate division of this court as follows:

> They [the paper tubes and bobbins] may not be mechanically interchangeable as equipment for certain looms because they are not mechanically identical in construction, but they are commercially interchangeable because they are of the same commercial value, and it is commercial value which determines whether or not they are "similar merchandise" as required to meet the definition of foreign value in the statute.

Subsequently, the court stated:

> The statement above quoted, if taken literally, probably might be regarded as a little broad, but we think the finding of the court below was correct insofar as it sanctions the acceptance of equality of commercial value as an important element in determining when goods are "similar" within the meaning of sections 402(c) and 402(d) of the Tariff Act of 1930.

A number of cases of the appellate court were then referred to in which the question of "similar merchandise" was involved. One of them is referred to here for its pertinence: *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, wherein it was said:

> In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402(b) [predecessor to section 402(c) in issue]. The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting the sale to the American purchaser only, *ipso facto* remove his merchandise from section 402(b), the foreign-value provision.

Applying the construction given to "similar merchandise" in the *Thomas* and *Massin* cases, *supra*, which cases were cited and followed in *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, the court is of opinion that the metal lathes gauged in inches for exportation to the United States are similar to lathes providing measurement in the metric system for home consumption, since they "* * * are made approximately of the same materials, * * * are adapted to substantially the same uses, and are so used * * *," and there is no difference in the cost of manufacture.

The four additional reports and the affidavit which were received in evidence pertain to subsequent interviews with and statements by Dr. Fritz Murkens, office manager of Meuser & Co., wherein an attempt is made to refute the previous evidence on the ground that the statements of Miss Hasenfuss were given without a knowledge of the statutory requirements of foreign value, whereas Dr. Murkens claimed to be so informed by virtue of reading a brochure on United States customs valuation, which led him to the conclusion that cost of production should apply to the instant importations, for the reason that he considered sales in the home market to be on a restricted or a controlled basis.

The statements made by Dr. Murkens may be said to be an attempt to cut the cloth to the pattern, and the court is disinclined to consider them of sufficient evidentiary value to offset the presumption of correctness accompanying the appraiser's action, which finds corroboration in the statements of Miss Hasenfuss, reported in exhibit A, *supra*.

In the circumstances of this case, the court is of the opinion that the imported lathes are similar for appraisement purposes to the lathes freely offered for sale for home consumption in the county of exportation and that there exists a statutory foreign value for the instant merchandise.

The court, accordingly, finds as facts:

1. The merchandise forming the subject of the appeals for a reappraisement, enumerated in the schedule attached to and made a part of this decision, consists of metal lathes, imported from Germany between March 1, 1952, and December 20, 1955.

2. Merchandise similar to that imported was freely offered for sale in the principal market in Germany for home consumption, in the usual wholesale quantity and in the ordinary course of trade.

3. That such or similar merchandise was not freely offered for sale in the principal market of the country from which exported, in the usual wholesale quantity and in the ordinary course of trade, for exportation to the United States.

As matters of law, the court concludes:

1. The proper basis of value for the metal lathes in controversy is foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, *supra*.

2. That said value is represented by the appraised values.

Judgment will issue accordingly.