(Reap. Dec. 11149)

JOHN H. FAUNCE, INC., ET AL. *v.* UNITED STATES

Entry No. 7912, etc.

(Decided February 23, 1966)

*Abraham Gottfried* for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

WILSON, Judge: These appeals for reappraisement concern the proper valuation of certain merchandise consisting of metal tool working machinery, commonly called engine lathes, and accessories imported from Frankfurt, Germany, by the Diamond Tool Co. of Los Angeles during the period from January 1951 to May 1952. The lathes were manufactured and exported by Meuser & Co. of Frankfurt, Germany. Twenty-four appeals were consolidated for trial and disposition in this matter.

The imported machines were appraised on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. The various appraisals, as officially approved, are indicated on the invoices in red ink, subject, however, to certain small deductions and additions, plus packing.

It is the contention of the plaintiffs that the imported lathes should have been appraised on the basis of export value, or in the alternative on the basis of cost of production, as defined in section 402(d) and 402(f) of the Tariff Act of 1930, and that the entered unit values as shown on the respective invoices represent the correct dutiable value.

The statutes involved provided as follows:

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, T.D. 49646:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(d) of the Tariff Act of 1930:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation, of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Since no evidence was introduced on the question of cost of production and that claim was not argued in the plaintiffs' brief, that aspect

of the case will not be further considered in this opinion. The two issues presented in this case are whether the imported lathes are so dissimilar to lathes which were freely offered for sale to all purchasers in Germany for home consumption at the time of exportation as to indicate that no foreign value existed for said merchandise, and, if no foreign value existed, whether the plaintiffs have established an export value for the merchandise.

The plaintiffs' evidence consists of the testimony of one witness, Stanley M. Swiatek, a design engineer who was president of the Diamond Machine Tool Co., the ultimate consignee herein, the plaintiffs named in the action being customs brokers. Practically all of Mr. Swiatek's testimony was directed to the claim that the imported merchandise differed very materially from the machine tools or lathes offered for home consumption in Frankfurt, Germany, at the time of exportation. The witness testified that the machine tools in question were calibrated in meters for sale in Germany, while the machines exported to the United States had to be built on an inch scale. While Mr. Swiatek stated that other changes were required in the machines to make them acceptable in the market of the United States, yet the only definite testimony concerning changes made in Germany related to the changeover from the metric system to the inch system. As indicated in the record the witness testified as follows:

Q. Mr. Swiatek, I believe you mentioned a number of changes in connection with the merchandise which is the subject of these appeals. Did I understand you to say that the changes were made in Germany, or in the United States, before you re-sold them?—A. Well, the bulk of them were made in Germany, although I did make changes here.

Q. With respect to the changeover from the metric system to the inch system?—A. Well, with respect to the changeover of the metric system to the inch system, this was all done in Germany. A metric machine cannot be changed to inches just by a simple changeover. [R. 37.]

To say that the bulk of certain changes were made in Germany is a statement too broad, indefinite, and uncertain to assist the court in reaching a determination as to the alleged differences between the machines offered for home consumption and the exported merchandise. The machines in their imported condition, it would seem, therefore, were the same as the machines sold at home except they were built on the inch scale rather than according to the metric system. The witness stated that a lot of 10 lathes which he purchased were exported to the United States in the same condition mechanically as those manufactured for the home trade in Germany. The witness also testified that at the time of the exportations in question the lathes sold for home consumption in Germany carried a guarantee of maintenance

while the ones he purchased for exportation carried no such guarantee; that he was required to give such warranty with the tooling machines when they were sold in the United States. The testimony on this point, however, was speculative and uncertain. The evidence shows that the 10 machines exported as geared to the metric system had stood for some time at the plant of the manufacturer where they were exposed to the weather and they were in such condition that they had to be cleaned up before they could be sold. There is no satisfactory evidence in the record, however, that such machines in their weather beaten condition were not freely offered for home consumption to all who desired to purchase them at the time of exportation. Furthermore, the only definite evidence that refers to change made in Germany on the other lathes imported by the Diamond Tool Co., as hereinbefore stated, was the changeover from the metric to the inch system although the witness testified that he delivered to the manufacturer, Meuser & Co. in Frankfurt, Germany, certain specifications for the manufacture of machines for export to the United States.

No real evidence is in the record as to value. While Mr. Swiatek made several general statements about certain machines being higher priced than certain other machines, yet he placed nothing whatever in the record to show the price at which like or similar merchandise was offered for sale at the time in question to all who desired to purchase such machines in the principal markets involved in the regular course of trade for exportation to the United States. Only in his brief did counsel for the plaintiff attempt to rely upon the invoices in the case as establishing the values contended for.

The oft-quoted case of *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, states very clearly the burden resting upon one challenging the correctness of an official appraisement:

By statutory provision Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C.C.P.A. (Customs) 1, T.D. 48264, citing *United States* v. *T. D. Downing Co. (George H. Sweetman, Inc.)*, 20 C.C.P.A. (Customs) 251, T.D. 46067.

In this same case, in reversing the trial court, our appellate court pointed out (page 45) the quality and kind of evidence required to establish facts relied upon:

It appears to us that the basic error of the trial court lies in the failure to properly distinguish between *ultimate* facts and *evidentiary* facts. "Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C.C.A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. *Hickey et al.* v. *Ritz-Carlton Restaurant & Hotel Co. of Atlantic City*, 96 F. (2d) 748, C.C.A. 3. The ultimate facts are the *issuable* facts without proof of which the plaintiff cannot recover. *Maxwell Steel Vault Co.* v. *National Casket Co.*, 205 F. 515; see also *United States* v. *Smith*, 39 F. (2d) 851, C.C.A. 1.

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U.S. 292. [Italics quoted.]

The court is definitely of the opinion that the evidence in the instant case falls far short of meeting the requirements set forth in the *Brooks* case, *supra*. The court is also of the opinion that the case of *D. C. Andrews & Co., Inc.* v. *United States*, 47 Cust. Ct. 473, Reap. Dec. 10086, is applicable to the facts in the case at bar. In that case, as here, the merchandise was metal lathes. Furthermore, the only difference between the lathes sold in Germany and those for export was that the measurements for the machines sold in Germany were in meters, and for those exported to the United States the inch system was used. The court upheld the appraisement on the basis of foreign value.

Plaintiffs' contention that the entered value of the imported merchandise as shown on the invoices should be taken as the true export value for appraisement purposes is without merit. While in rare instances invoices have been given some weight in establishing a *prima facie* showing of value, that rule is not applicable to the facts here presented. In view of the facts set forth in defendant's report, exhibit A, the reliance upon the invoices to prove value is of no avail.

The court finds the following facts:

1. The merchandise in question consists of metal tool working machinery, commonly called engine lathes, with accessories.

2. The machines in question were exported from Frankfurt, Germany, during the period extending from January 1951 to May 1952.

3. The imported machine tools were appraised on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, T.D. 49646.

4. The appraised values as officially approved are indicated on the various invoices in red ink subject to certain deductions and additions, plus packing.

5. Merchandise similar to that imported was freely offered for sale in the principal markets in Germany for home consumption to all purchasers in the usual wholesale quantities and in the ordinary course of trade.

6. The plaintiffs have failed to offer evidence sufficient to overcome the correctness of the appraisal or to establish an export value or any other value as claimed.

Conclusions of law:

1. Foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise herein involved.

2. That such foreign value is represented by the appraised value in each case.

Judgment will be rendered accordingly.