(Reap. Dec. 10013)

OSCAR E. EGGEN (AMERICAN EXPRESS CO.) ET AL. *v.* UNITED STATES

Entry No. 37863, etc.

(Decided June 1, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* and *Barnes, Richardson & Colburn* of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, trial attorneys), for the defendant.

JOHNSON, Judge: These appeals for reappraisement, consolidated at the trial, involve ball bearings and parts imported from West Germany between March and October 1959, inclusive.

This merchandise is subject to appraisement under section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, by virtue of the fact that ball bearings and parts appear on the list of articles published, in accordance with the statute, in T.D. 54521.

The items covered by these appeals were appraised as follows, on the basis of the foreign value of similar merchandise:

| ITEM | TYPE SHIELD | APPRAISED VALUE (per bearing) |
|---|---|---|
| R2''ZZ, ABEC 1 | Stainless steel | DM 3.20 each |
| R2''ZZ, ABEC 3 | Plain metal | DM 3.20 each |
| R2''ZZ, ABEC 3 | Stainless steel | DM 3.20 each |
| R3''ZZ, ABEC 1 | Stainless steel | DM 2.60 each |
| R3''ZZ, ABEC 3 | Plain metal | DM 2.60 each |
| R3''ZZ, ABEC 3 | Stainless steel | DM 2.60 each |
| R3''AZZ, ABEC 1 | Plain metal | DM 2.60 each |
| R3''AZZ, ABEC 3 | Plain metal | DM 2.60 each |
| R4''ZZ, ABEC 1 | Stainless steel | DM 2.25 each |
| EL8ZZ, ABEC 1 | Plain metal | DM 2.25 each or DM 2.30 each |
| EL8ZZ, ABEC 1 | Stainless steel | DM 2.30 each all the above, less 15%, less 5%, packed, or plus packing where indicated as included in the invoice price. |

Plaintiffs claim that the merchandise is properly subject to appraisement on the basis of cost of production.

At the trial, Oscar E. Eggen, sales engineer and importer of bearings from Germany, testified as follows: The designations on the invoices, R2'', R3'', R4'', and EL8, indicate the size of the bearing; the letters ZZ mean that shields are included; and the letter A in the designation R3''A indicates that the bearing is a little wider than the R3'' size. The bearings with the designation R are manufactured in inch dimensions, but the bearings with the designation EL are in metric dimensions. The size bore of these items is as follows:

| R2''ZZ | ⅛ of an inch |
|---|---|
| R3''ZZ | ³⁄₁₆ of an inch |
| R4''ZZ | ¼ of an inch |
| EL8 | 8 millimeters |

Samples of the merchandise were received in evidence as plaintiffs' exhibits 1 through 5, inclusive.

Mr. Eggen stated that he sold the items in inch dimensions to manufacturers making component parts for aircraft and those in metric dimensions to commercial manufacturers. He never sold a metric-size bearing to an inch-size user. The two are not interchangeable because the dimensions are different. He had never heard of a purchaser of an inch-size bearing taking a metric-size bearing as a substitute. A millimeter bearing could be used in an inch measurement only if the measurement corresponded to the size of the bearing. In other words, identical dimensions are interchangeable. However, the metric system does not correspond at all to the inch system.

There was received in evidence an affidavit of Michael Groh, export sales manager of the firm of Georg Müller Kugellager-Fabrik K. G., hereinafter designated as GMK, manufacturer of the imported merchandise. This affidavit contains the following information: There are two German ball bearing manufacturers considered as competitors of GMK: Kugelfischer Georg Schäfer & Co., Schweinfurt, Germany, and SKF Kugellager-Fabriken, Stuttgart, Germany. Each of these manufacturers as well as GMK has its own pricelist for the sale of ball bearings in Germany. The list prices are the same but the discounts vary. Sales by GMK for consumption in Germany are divided between original equipment manufacturers, mainly, motor manufacturers, and a restricted number of bearing wholesalers. The country is divided into agency areas, and agents are not permitted to acquire customers or to sell outside their areas. The inch-size ball bearings, with the exception of those designated R4"ZZ, are not sold by GMK for consumption in Germany, and R4"ZZ bearings are sold only to the IBM factory there. This is due to the fact that the metric system is used in Germany and inch-size bearings are not interchangeable with metric-size bearings. Three inch-size bearings had formerly been included in GMK's pricelists, but such bearings were never sold in Germany; therefore, they were not included in subsequent pricelists for Germany.

Other manufacturers in Germany sell ball bearings to industrial customers and to wholesalers and retailers through company owned shops and storehouses in the principal cities of Germany.

All of GMK's inch-size ball bearings have been sold for export. Affiant understood also that any inch-size ball bearings made by GMK's competitors were sold for export. GMK sold for export to the United States only to three importers appointed by written agreement dividing the United States into three sales territories. None of the agents is permitted to resell outside his territory.

Inch-size bearings are manufactured in four classes or qualities, but only class 1 and class 3 have been sold to Mr. Eggen. They are identified on the invoices as ABEC 1 and ABEC 3.

The affidavit then gives cost of production figures for the period before November 5, 1959, and the period after November 5, 1959.

Defendant introduced into evidence a report of Customs Representative Heinz L. Herz, dated March 26, 1959. Mr. Herz states that he visited the offices of the manufacturer, GMK, and interviewed Mr. Michael Groh, export manager, who furnished the following information: GMK restricts its sales to the United States to selected importers and will not sell to others. The bearings sold for home consumption in Germany are identical to those sold for exportation to the United States; there are no substantial differences between the bearings sold for home consumption by GMK and those sold by other German manufacturers; GMK's bearings could be considered similar to those of other German producers. GMK sells its merchandise in Germany through agents who take orders from users and does not sell to wholesalers for home consumption resale. It will sell to wholesalers only with the express understanding that the bearings be exported and not resold in Germany.

The customs representative's report concludes:

In view of the foregoing restriction and the United States Appraiser's comment on the C.I.E. Form No. 8 that, in the absence of a foreign value for such merchandise, a foreign value for similar merchandise exists, no further inquiry was made.

On the record presented, plaintiffs claim that there is no foreign, export, or United States value for this merchandise, and that cost of production is the proper basis of appraisement. Defendant claims that the appraised values have not been shown to be incorrect and that the importer has not established another correct dutiable basis of value for the merchandise. Defendant concedes that there is no export nor United States value for *such* merchandise, but claims that the record does not establish that there was no export value for *similar* merchandise.

The burden of proof upon a party attacking appraised values is twofold: To prove the action of the appraiser erroneous, and to establish affirmatively the correct dutiable value. *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 502; *H. S. Dorf & Co., Inc.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593. Even where an appraisement based on the value of similar merchandise is erroneous because there is no similar merchandise, the appealing party must establish the proper dutiable value in strict compliance with the statute. *United States* v. *Vandegrift Forwarding Co., Inc.*, 42 Cust. Ct. 687, A.R.D. 96.

Under section 402a of the Tariff Act of 1930, as amended, the value of merchandise subject to appraisement thereunder shall be (1) the foreign value or the export value, whichever is higher, (2) where neither can be satisfactorily ascertained, the United States value, or (3) where neither foreign, export, nor United States value can be ascertained, the cost of production. Thus, before cost of production may be resorted to as the proper basis of valuation, it must be established that no foreign, export, or United States value, as those terms are defined in the statute, existed. *Frank P. Dow Co., Inc.* v. *United States*, 32 Cust. Ct. 547, Reap. Dec. 8276; *Joseph G. Maddox, as Trustee, etc.* v. *United States*, 35 Cust. Ct. 412, Reap. Dec. 8484.

The statutory definitions of foreign, export, and United States value all refer to the market value or price at which *such or similar* merchandise is freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade. If there be no "such" merchandise, but "similar" merchandise is so offered for sale, then, the respective foreign, export, or United States value is to be derived from the value of the "similar" merchandise. *Pan-American Plywood Co.* v. *United States*, 43 Cust. Ct. 614, A.R.D. 112. Therefore, in order to negative the existence of those values, it must be established that neither such nor similar merchandise is freely offered for sale to all purchasers for home consumption, for exportation to the United States, or in the United States.

In the instant case, it appears that "such" merchandise was not freely offered for sale by the manufacturer to all purchasers for home consumption, for exportation to the United States, or within the United States. Therefore, there is no foreign, export, or United States value for "such" merchandise.

The next question is whether or not there is "similar" merchandise upon which foreign, export, or United States value may be predicated. According to the report of Mr. Herz, Mr. Groh stated to him:

* * * there are no substantial differences between the bearings sold for home consumption by GMK and those sold in the home market by the other German manufacturers, and that his firm's bearings could be considered similar to those of the other German producers.

However, in his affidavit, Mr. Groh states that bearings sold for home consumption in Germany are in metric dimensions; that inch-size bearings made by his firm and by his competitors are sold for export; that inch-size bearings could not be interchanged with metric-size bearings. Assuming, without deciding, that inch-size bearings are not similar to metric-size bearings, foreign value of inch-size bearings could not be predicated upon the market value or price of metric-size bearings. This would eliminate foreign value as the proper basis for the appraisement of inch-size bearings but not as to the metric-

size bearings involved herein, EL8ZZ, ABEC 1. No evidence has been presented to establish that foreign value is not the proper basis for the appraisement of those bearings.

The affidavit of Mr. Groh states that any inch-size bearings made by his firm's competitors in Germany are sold for export. There is nothing in the record to indicate that these bearings are not similar to the inch-size bearings made by the manufacturer herein. Nor is there anything to indicate that those manufacturers imposed any restrictions on the sale of ball bearings for exportation to the United States. The record presented does not establish that no export value existed for merchandise similar to that involved herein.

No evidence whatsoever has been presented to show the existence or nonexistence of a United States value for similar merchandise.

Plaintiffs' failure to negative the existence of an export value and a United States value for similar merchandise makes it unnecessary for me to consider the evidence presented as to cost of production, since that value as a basis for appraisement may be resorted to only if it has been established that no foreign, export, or United States value existed.

On the record presented, plaintiffs have failed to meet the burden of establishing cost of production or any value other than the appraised value as the correct dutiable value of the imported merchandise. Therefore, the appraised values must be sustained.

I find as facts:

1. That the merchandise involved in these cases consists of ball bearings and shields in inch dimensions and in metric dimensions, imported from West Germany between March and October 1959, inclusive.

2. That the merchandise was appraised on the basis of the foreign value of similar merchandise.

3. That such merchandise was not freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in Germany, for exportation to the United States, or in the United States.

4. That metric-size ball bearings were offered for sale for home consumption in Germany by other manufacturers to industrial customers and to wholesalers and retailers through company owned shops and storehouses in the principal cities of Germany.

5. That other manufacturers sold ball bearings in inch sizes for exportation.

6. That the evidence fails to establish that the ball bearings in inch sizes sold by other manufacturers for exportation to the United States were not similar to the imported inch-size bearings or that they were not freely offered for sale to all purchasers in the usual wholesale

quantities and in the ordinary course of trade for exportation to the United States.

7. That there is no evidence whatsoever as to the United States value of similar merchandise.

I conclude as matters of law:

1. That there is no foreign, export, or United States value for such merchandise.

2. That the evidence is insufficient to negative the existence of export or United States value of similar merchandise.

3. That plaintiffs have failed to sustain their burden of proof.

4. That the value of each of the imported items is the appraised value.

Judgment will be rendered accordingly.