(Reap. Dec. 10901)

OSCAR E. EGGEN (AMERICAN EXPRESS CO.) ET AL. *v.* UNITED STATES

Entry No. 37863, etc.

(Decided on rehearing [Reap. Dec. 10013] February 25, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) ; *Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel), associate counsel; for the plaintiffs.

*John W. Douglas,* Assistant Attorney General (*Richard E. FitzGibbon, Daniel I. Auster,* and *Samuel D. Spector,* trial attorneys), for the defendant.

FORD, Judge: The appeals for reappraisement listed in schedule "A," attached hereto and made a part hereof, consolidated for the purpose of trial, were originally heard and decided by the late Judge Jed Johnson of this court and were reported as *Oscar E. Eggen (American Express Co.) et al.* v. *United States,* 46 Cust. Ct. 694, Reap. Dec. 10013.

The court therein held that the plaintiffs failed to sustain their burden of proof. Subsequently, a motion for rehearing was granted and the decision and judgment set aside. *Same* v. *Same,* 47 Cust. Ct. 412, Reap. Dec. 10047.

The merchandise involved herein consists of ball bearings and parts imported from West Germany. This merchandise is subject to appraisement under section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, by virtue of the fact that ball bearings and parts appear on the final list of articles published in accordance with the statute in T.D. 54521.

The items covered by these appeals were appraised on the basis of foreign value of similar merchandise as follows:

| Item | Type shield | Appraised value (per bearing) |
| --- | --- | --- |
| R2″ZZ, ABEC 1 | Stainless steel | DM 3.20 each |
| R2″ZZ, ABEC 3 | Plain metal | DM 3.20 each |
| R2″ZZ, ABEC 3 | Stainless steel | DM 3.20 each |
| R3″ZZ, ABEC 1 | Stainless steel | DM 2.60 each |
| R3″ZZ, ABEC 3 | Plain metal | DM 2.60 each |
| R3″ZZ, ABEC 3 | Stainless steel | DM 2.60 each |
| R3″AZZ, ABEC 1 | Plain metal | DM 2.60 each |
| R3″AZZ, ABEC 3 | Plain metal | DM 2.60 each |
| R4″ZZ, ABEC 1 | Stainless steel | DM 2.25 each |
| EL8ZZ, ABEC 1 | Plain metal | DM 2.25 each or DM 2.30 each |
| EL8ZZ, ABEC 1 | Stainless steel | DM 2.30 each all the above, less 15%, less 5%, packed, or plus packing where indicated as included in the invoice price. |

It was contended by plaintiffs in the original trial and in the case presently before the court that the merchandise was properly subject to appraisement on the basis of cost of production, as set forth in section 402a(f) of the Tariff Act of 1930, as amended, *supra*. The court, in its original decision, found as a matter of law, based upon the record as originally made, that no foreign, export, or United States value for such merchandise existed. The court also found that the evidence therein was insufficient to negate the existence of export or United States value of similar merchandise and plaintiffs had, accordingly, failed to sustain their burden of proof.

The record as originally made consists of the testimony of the importer, Oscar E. Eggen, an affidavit of Michael Groh, export manager of the German manufacturing firm, samples of the merchandise, received in evidence as plaintiffs' exhibits 1 through 5, inclusive, and a report by Customs Representative Heinz L. Herz, received in evidence as defendant's exhibit A.

The court, in its original decision, set forth concisely the testimony of Mr. Eggen, which I adopt and which reads as follows:

At the trial, Oscar E. Eggen, sales engineer and importer of bearings from Germany, testified as follows: The designations on the invoices, R2'', R3'', R4'', and EL 8, indicate the size of the bearing; the letters ZZ mean that shields are included; and the letter A in the designation R3'' A indicates that the bearing is a little wider than the R3'' size. The bearings with the designation R are manufactured in inch dimensions, but the bearings with the designation EL are in metric dimensions. The size bore of these items is as follows:

| | |
|---|---|
| R2''ZZ | 1/8 of an inch |
| R3''ZZ | 3/16 of an inch |
| R4''ZZ | 1/4 of an inch |
| EL8 | 8 millimeters |

The record on rehearing consists of the oral testimony of Mr. Michael Groh, the same party whose affidavit was received in evidence at the original hearing, and a Mr. William F. Meerwarth. In addition thereto, an additional affidavit of Michael Groh was received in evidence as well as affidavits of various other witnesses in Germany.

Based upon the conclusions of law in the original opinion, in which I concur, there appears to be no question that no foreign, export, or United States value exists for such merchandise. However, since the appraisement was based upon similar merchandise and the statutory definitions of value, foreign, export, and United States values refer to such or similar merchandise, it was incumbent upon plaintiffs to negate the existence of similar merchandise or the free offering of similar merchandise.

With respect to foreign value, the record satisfactorily established, by virtue of the testimony of Messrs. Eggen, Groh, and Meerwarth, that the metric-size ball bearings are not similar to inch-size ball bearings. While there is no hard-and-fast rule defining similarity

for appraisement purposes, the following questions should be included in considering similarity of different items:

1. Are the articles made of approximately the same material?

2. Are they capable of or adapted to the same use and may they be substituted for one another?

3. Are they of the same approximate commercial value?

For all intents and purposes, inch- and metric-size ball bearings conform to item 1 above. However, the record establishes that inch-size bearings are not interchangeable with metric-size bearings. While interchangeability is not a requirement under item 2 above, *United States* v. *Thomas & Co. (Dehler-Signoret Corp.)*, 21 CCPA 254, T.D. 46788, this, coupled with the fact that the cost of production of inch-size bearings produced in Germany was approximately 20 per centum higher than metric-size bearings, indicates to my satisfaction that they are not similar to each other for appraisement purposes. Accordingly, I am of the opinion that no foreign value exists for such or similar merchandise.

The record as made establishes that inch-size bearings manufactured in Germany for export to the United States are restricted to particular parties in the United States. It appears that the three firms listed below were the only manufacturers known to produce inch-size bearings.

1. Georg Muller Kugellager-Fabrik K.G., hereinafter referred to as GMK.

2. Kugelfischer Georg Schäfer & Co., hereinafter referred to as KGS.

3. Gebruder Reinfurt.

The testimony of Mr. Groh clearly establishes the restriction of sales by GMK of inch-size bearings to the United States.

The affidavit of Kurt Göttel stands unrebutted as to the fact that KGS does not manufacture inch-size bearings of this R series, ranging from R2 to R8, involved herein. The affidavit of Heribert Leisaner establishes that the firm of Gebruder Reinfurt sold to only one selected purchaser in the United States in the year 1959, involved herein.

Accordingly, the evidence is sufficient to negate the existence of export value for such or similar merchandise.

The question as to whether or not a United States value exists must next be considered. The court held, in its original decision, that a United States value does not exist with respect to such merchandise. The record herein amply establishes this fact. Since KGS never manufactured bearings in the R series ranging from R2 to R8, there is obviously no basis for consideration of this firm's product for similarity for the purpose of United States value. It would also appear from the affidavit of Mr. Leisaner that the inch-size bearing made by GMK,

the manufacturer involved herein, was not produced by any other German manufacturer. Accordingly, it would also appear that similarity between the product of Gebruder Reinfurt and GMK could not be considered for the purpose of United States value. Therefore, the evidence establishes to my satisfaction that there is no United States value for such or similar merchandise.

Accordingly, the next basis of appraisement under the statute is cost of production. The cost-of-production figures contained in the original affidavit of Mr. Michael Groh stand unrebutted and are in compliance with the statute. Accordingly, I find cost of production as the proper basis of appraisement for the inch-size bearings in the R series ranging from R2 to R8.

While the profit shown in cost-of-production figures set forth in finding number 4, *infra*, are based on the actual profit of the manufacturer, these figures may be considered where a diligent effort has been made to ascertain the profit which is ordinary in the case of merchandise of the same general character. The second affidavit of Michael Groh, plaintiffs' exhibit 7, establishes that a diligent effort had been made but competing firms declined to disclose such information. *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407.

A review of the cost-of-production figures, as contained in plaintiffs' exhibit 6, indicates that for item R4″ZZ, ABEC 1, the profit is 0.06 per centum. Under the statutory provisions, the profit must not be less than 8 per centum of the figures given for material and fabrication plus general expenses. In this instance, the statutory minimum of 8 per centum is 0.09 and said figure is utilized for the cost-of-production figure for R4″ZZ, ABEC 1.

There being no contradictory evidence with respect to the metric-size bearings imported herein, I find the proper basis of appraisement to be foreign value of similar merchandise, as appraised.

On the basis of the record before me and for all the reasons above set forth, I find as facts:

1. That the merchandise under consideration consists of ball bearings in the R series ranging from R2 to R8 in inch dimensions.

2. That, during the period in question, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Germany either for home consumption or for exportation to the United States.

3. That, during the period in question, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the United States.

4. That, at a time preceding the dates of exportation of the particular merchandise involved, which would ordinarily permit the manu-

facture or production of the particular merchandise under consideration, in the usual course of business, the following were the elements of the cost of production of said merchandise shipped prior to November 5, 1959:

| Item | Materials & fabrication | General expenses | Profit | Packing | Total |
|---|---|---|---|---|---|
| R2''ZZ, ABEC 1, (stainless steel) | 0. 91 | 0. 31 | 0. 61 | 0. 05 | DM 1.88 |
| R2''ZZ, ABEC 1, (plain metal) | 0. 89 | 0. 31 | 0. 59 | 0. 05 | DM 1.84 |
| R2''ZZ, ABEC 3, (stainless steel) | 1. 00 | 0. 34 | 0. 55 | 0. 05 | DM 1.94 |
| R2''ZZ, ABEC 3, (plain metal) | 0. 97 | 0. 34 | 0. 54 | 0. 05 | DM 1.90 |
| R3''ZZ, ABEC 1, (stainless steel) | 0. 83 | 0. 27 | 0. 29 | 0. 07 | DM 1.46 |
| R3''ZZ, ABEC 1, (plain metal) | 0. 81 | 0. 27 | 0. 27 | 0. 07 | DM 1.42 |
| R3''ZZ, ABEC 3, (stainless steel) | 0. 91 | 0. 29 | 0. 29 | 0. 07 | DM 1.56 |
| R3''ZZ, ABEC 3, (plain metal) | 0. 88 | 0. 29 | 0. 26 | 0. 07 | DM 1.50 |
| R3''AZZ, ABEC 1, (stainless steel) | 0. 88 | 0. 29 | 0. 27 | 0. 06 | DM 1.50 |
| R3''AZZ, ABEC 1, (plain metal) | 0. 86 | 0. 29 | 0. 25 | 0. 06 | DM 1.46 |
| R3''AZZ, ABEC 3, (stainless steel) | 0. 97 | 0. 33 | 0. 25 | 0. 06 | DM 1.61 |
| R3''AZZ, ABEC 3, (plain metal) | 0. 94 | 0. 32 | 0. 25 | 0. 06 | DM 1.57 |
| R4''ZZ, ABEC 1, | 0. 86 | 0. 27 | 0. 09 | 0. 06 | DM 1.28 |
| R4''ABEC 1, | 0. 58 | 0. 19 | 0. 25 | 0. 06 | DM 1.08 |

Note: Whenever "ZZ" appears, this may also be shown as "2Z."

5. The evidence is insufficient with respect to the metric-size bearings to overcome the presumption of correctness attaching to the appraisement.

I conclude as matters of law:

1. That there is no foreign, export, or United States value for such or similar merchandise in the sizes R2 to R8, as further described under findings of fact number 4.

2. That cost of production, as provided for in section 402a (f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for appraisement of ball bearings in sizes R2 to R8 in inch-size dimensions.

3. That the proper basis for appraisement of the metric-size bearings involved herein is foreign value, as appraised.

4. That the cost of production of the involved merchandise shipped prior to November 5, 1959, as prescribed by the statute, is the total shown for each size and type in findings of fact number 4.

Judgment will be rendered accordingly.