(A.R.D. 279)

DESCOWARE CORP. (WESTLAND) *v.* UNITED STATES

Entry No. 22501.

Third Division, Appellate Term

(Decided October 27, 1970)

*Lawrence & Tuttle* and *Glad & Tuttle* (*Edward N. Glad* of counsel) for the appellant.

*William D. Ruckelshaus,* Assistant Attorney General (*Brian S. Goldstein* and *Ralph Bontempo,* trial attorneys), for the appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: This is an application to review the decision and judgment of the trial judge sustaining the appraised values of certain cast iron enamelware manufactured in and exported from Belgium. *Descoware Corp.* (*Westland*) v. *United States,* 62 Cust. Ct. 972, R.D. 11673 (1969).

We note at the outset that there is an identity of parties, issues, merchandise, manufacturer and attorneys in this case and in R60/1537, *Descoware Corp.* (*Westland*) v. *United States,* 58 Cust. Ct. 698, R.D. 11297 (1967), the record in which was incorporated herein.[1] The merchandise in the incorporated case was exported on October 16, 1959, and that in the pending action on September 28, 1959.

It was stipulated in both cases that the merchandise appears on the Final List promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521; that there was no foreign value, export value or United States value, as defined in section 402a (c), (d), and (e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, for such or similar merchandise at the time of exportation; and that cost of production, as defined in section

---

[1] The six contested items involved in both cases are described on the invoices as 81/A Skillet SK 23; 81/C Skillet SK 19; 7/A Cast iron cover CC 14; 81/A Skillet SK 2303; 81/C Skillet 1903; and 7/A Cast iron cover CC 1403. Other items involved in these cases were the subject of stipulation and, accordingly, are not in issue.

402a(f) of the above amended act is the proper basis of appraisement. Section 402a(f), as amended, *supra*, reads as follows:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The sole evidence in the incorporated case is an affidavit (exhibit 1) of Octave Rary, president of the manufacturer exporter herein, executed on February 3, 1966, more than six years after the date of exportation. It discloses, in the words of the trial judge, that:

* * * the affiant was the managing director of the exporter from June 1951 to April 1960 at which time he became its president. Mr. Rary further states that he is personally familiar with the sale of the firm's enameled cast-iron ware for home consumption and for export to the United States; and that as managing director he was personally familiar with the cost accounting of the various enamel cast-iron ware that the firm manufactured for home consumption and for export to the United States. Since 1951, sales to the United States have been limited to two purchasers and in more recent years to one purchaser. Such or similar merchandise was not freely offered for sale in the United States to other buyers. The iron handle skillets were first manufactured in late 1949 and 1950 for export only to the United States and were never sold for home consumption in Belgium. The skillets with wooden handles are sold for home consumption and are produced one piece at a time, whereas iron handle skillets and covers are mass produced in multiple cavity molds and, there-

fore, are manufactured at a considerably cheaper production cost than the wooden handle skillets.

The affiant further alleges that, during the latter half of 1959, the pricing of iron handle skillets for exportation to the United States "was so low that we were selling at a loss." He also sets forth that the cost of production figures which are stated in the affidavit "are taken from my copies of profit and loss statements and represent the actual costs to my company in the manufacture of the iron handle skillets during the latter half of 1959." * * *

      *      *      *      *      *      *      *

The affiant also asserts that one other named firm, [Fonderies & Emailleries D'Audenarde] located at Audenarde, Belgium, "is the only other manufacturer of enamelled cast-iron ware *similar* to that manufactured by" the exporter, but adds "However, that firm to my knowledge did not make any of the iron handle skillets or cast iron covers such as we manufactured solely for export to the United States." [Emphasis supplied.]

The judge also noted the allegation in plaintiff's brief that—

* * * although exhibit 1 reveals that there was one other manufacturer of enamelware in Belgium, "that firm did not make any iron handle skillets or cast iron covers *such as involved herein*, therefore, following the case of *United States* v. *F. B. Vandegrift & Co. et al.*, 26 CCPA 360, 368, C.A.D. 42, the profit if any, made by the manufacturer herein, or in lieu thereof, at least the 8% minimum required by the statute must represent the item of profit in the statutory definition of cost of production." [Emphasis supplied.]

but rejected this contention, stating:

Plaintiff's argument that the other manufacturer did not make iron handle skillets or cast-iron covers *such as involved herein* is without merit for the affiant indicates that the *other* manufacturer made *similar* cast-iron ware. The statute section 402(f)(1) refers to *such or similar* merchandise, and section 402(f)(4) refers to profit in the case of merchandise of the *same general character* and to merchandise of the *same class or kind*. Hence, the *Vandegrift & Co.* case, *supra*, does *not* apply, thereby making it inappropriate to accept the figures alleged in exhibit 1 or those figures calculating cost of production as stated in plaintiff's brief.

Concluding that plaintiff had failed to make out a *prima facie* case, the judge did not deem it necessary to pass upon questions raised by defendant as to the sufficiency of the facts alleged in the exhibit, the proper placement of foremen's wages, or whether the allegations to profits were conclusory and not evidentiary.

In the current case, appellant offered in evidence another affidavit executed by Rary, dated August 5, 1968 (exhibit 1), in which he states that he wrote to Mr. de Forestier, the managing director of Fonderie D'Audenarde, on May 19 and on June 6, 1967, by regular mail, and again on July 4, 1968, by registered mail, "requesting in-

formation as to their usual profit during the latter half of 1959, * * *"; that the first two letters were not answered; and that the third was returned by the Post Office with the information that it could not be delivered. The affiant also states that "Owing to the liquidation of the Fonderie D'Audenarde, Mr. de Forestier must have returned to France, his country of origin." [2]

A translation (furnished by appellant) of Rary's letter to de Forestier reads in part:

> The American Customs Authorities desire us to produce the margin of profit obtained by a competitor on the frying pans with cast-iron handles, *similar* to the frying pans of F. E. Saint Trond for the period of June/September of 1959. [Emphasis supplied.]

The trial judge sustained the values returned by the appraiser, holding:

> There is nothing in exhibit 1 in the current case that would require the court to pass upon the foregoing questions on the entire record, nor as to the question of diligence in ascertaining information from the *other* manufacturer as to *such or similar* enameled cast-iron ware. Section 402a (f) (4) refers to *profit* in the case of merchandise of the *same general character* and to merchandise of the same *class or kind*. Exhibit A part of exhibit 1 in the current case, addressed to the *other* manufacturer, refers to "profit obtained by a competitor on the frying pans with cast-iron handles, *similar* [emphasis supplied] to the frying pans of F. E. Saint Trond * * *," and NOT to merchandise of the *same general character* or the *same class or kind*. In light of the views expressed *supra*, the court need not delve into a discussion of diligence, the proper placement of foremen's wages or whether the allegations as to profit are conclusory and not evidentiary. See *N. M. Albert Co., Inc., et al.* v. *United States*, 62 Cust. Ct. 1029, A.R.D. 254, decided April 24, 1969.
>
> Moreover, there is, therefore, no impelling reason to decide whether or not Mr. Rary, the affiant in both exhibits 1, is or is not qualified to testify as to the elements of a statutory cost of production for the six items in issue herein, based upon his duties as managing director of the exporter. [Emphasis copied.]

In its application for review, appellant assigns error to the trial court in, among other things, "not finding and holding that the manufacturer of this merchandise had used diligence in trying to obtain information on the profits of the only competitor of enamel cast iron ware in Belgium, * * *", and asserts (brief, page 6) that he "went off on the niceties of the distinction between 'similar' and 'same general

---

[2] The affiant also alleges that the books and business records of his firm, including the profit and loss statements, were prepared and kept under his personal supervision while he was managing director; and that the cost of production figures set out in his first affidavit are true and correct and "are the same as reflected in the accounting books from which are prepared the profit and loss statements."

character' or 'same class or kind' " and "chose to ignore the diligent efforts of Mr. Rary."

What constitutes diligence depends upon the particular circumstances of each case. Thus, the timing as well as the scope of the inquiry may be of pertinence in deciding whether the effort shown in a given case was "adequate or merely perfunctory." *United States* v. *Oscar E. Eggen (American Express Co.) et al.*, 57 Cust. Ct. 736, 747, A.R.D. 212 (1966) affirmed, *Id.* v. *Id.*, 55 CCPA 95, C.A.D. 939 (1968).

Considering, *arguendo*, appellant's claim of diligence, we find, on the facts herein, that it lacks merit. A review of the entire record, going back to the time when the incorporated case, R60/1537, involving the same issues, merchandise, and parties, was tried,[3] reveals a pattern of inaction, if not neglect, with regard to ascertaining information as to the profits of the other manufacturer of merchandise of the same general character in Belgium, although the necessity for making such effort as a prerequisite to compliance with section 402a(f) was settled law at that time.

The details of the proof essential to establishing the profit element of the statutory cost of production were spelled out clearly in *United States* v. *Henry Maier*, 21 CCPA 41, 50, T.D. 46378 (1933), by our court of appeals which, construing section 402(e) of the Tariff Act of 1922 (the identically worded predecessor to section 402a(f)) stated:

> It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like constuction [sic] should be given to said section 402(e) of the Tariff Act of 1922. In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, *if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable.* If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. * * *
>
> It is our view that there is no occasion for construing said paragraph 4 by eliminating any portion of it as unworkable, as indicated by the lower court, but that it should be reasonably construed to effectuate the apparent intent of Congress, viz, that the

---

[3] The appeals for reappraisement in R60/1537 and R60/1538 were filed on January 6, 1960, and both cases appeared for the first time on the Los Angeles calendar in September, 1960. In September, 1963, R60/1537 was heard in part and continued to February, 1966, when exhibit 1 was received in evidence and the case submitted. The pending case which had been suspended in September, 1963 under R60/1537, was tried and submitted in September, 1968.

profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with *respect to profits ordinarily made by other manufacturers of merchandise of the same general character* as that imported, in the country of the exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

    \*       \*       \*       \*       \*       \*       \*

*We think the words "merchandise of the same general character," as used in said paragraph 4, are not synonymous with the words "such or similar merchandise" as used in paragraph 2 of said section 402(e).* [Emphasis supplied.]

Although we do not suggest that judicial construction of a statute requires continual restatement as support for its authority, we cannot help but note that our appellate court has consistently reiterated in succeeding cases the legal principles it enunciated in *Maier*. It is now settled that, in establishing the cost of production components, the profits ordinarily made by other manufacturers of the *same general character* as that imported, in the country of exportation, must be considered; and that, if evidence of such profits is not ascertainable, despite the exercise of diligent efforts to obtain them, or if articles of that character are not manufactured or produced in the country of exportation, then the profit ordinarily added by the manufacturer of the imported merchandise may properly be considered. *United States* v. *T. E. Ash*, 23 CCPA 360, T.D. 48211 (1936) ; *United States* v. *F. B. Vandegrift & Co. et al.*, 26 CCPA 360, C.A.D. 42 (1939) ; *United States* v. *Heemsoth-Kerner Corp.*, 31 CCPA 75, C.A.D. 252 (1943) ; *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407 (1949).

A clear exposition of the purpose and application of section 402a (f)(4) was given by Judge Richardson in *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, 503–505, A.R.D. 147 (1962) (decided the year before the incorporated *Descoware* case was noticed for trial),[4] as follows:

> \* \* \* The legislative purpose underlying the enactment of paragraph (4) of section 402(f), *supra*, appears to have been the establishment of a safeguard against the undervaluation of imported merchandise for duty purposes. This is evident from the statutory scheme of comparison of the profit margin added to the merchandise in question in the country of origin against the merchandising practices in this respect of competitor manufacturers in the same country as to such or similar merchandise, or merchandise of the same general character.

---

[4] Thus, appellant did not lack "opportunity to prepare a record reconciled to the law as it was stated in *Berben." Rex Cutlery Corp.* v. *United States*, 55 Cust. Ct. 778, 784, A.R.D. 199 (1965).

We are not here concerned with the ascertainment of the profit ordinarily added by other manufacturers of pistols *such as* or *similar to* the pistols in question. We are concerned only with pistols of the *same general character*. A distinction should be drawn between these two categories of merchandise. *Cf. United States* v. *T. E. Ash*, 23 C.C.P.A. (Customs) 360, 365, T.D. 48211; *Empire Distributors* v. *United States*, 30 Cust. Ct. 487, 495, Reap. Dec. 8194, affirmed *United States* v. *Empire Distributors*, 33 Cust. Ct. 568, A.R.D. 47. The evidence presented by the appellee at the trial has, in our opinion, eliminated the former category from the scope of our inquiry. But the language of the above-excerpted affidavit has brought into focus the latter category. And insofar as evidence of the profit margin of merchandise in such category is concerned, we think this affidavit is palpably deficient in precisely the particulars contended for by appellant.

While appellee correctly adverts to the law in this affidavit with respect to the addition of profit under the cost of production theory, in our opinion, the affidavit furnished the trial court with no basis for crediting its recitals concerning the absence or nonproduction of records or other data of other Italian manufacturers of pistols of the same general character as to profit. And notwithstanding our inquiries on the oral argument of the instant application to ascertain from appellee creditable reasons for the nonproduction of such records and data, much was left to be desired in answer thereto before we could be in a position to give credence to such recitals.

We are, of course, mindful of the fact that the language of the statute oftentimes places a seemingly insuperable burden upon the importer to marshal evidence from sources whose very existence or whereabouts are unknown to him and, indeed, often unavailable to him. To bridge this abyss, the courts have on occasion permitted evidence of profits added by the manufacturer to the merchandise in question, coupled with proof of unrewarded diligence on the part of the importer to ascertain the profit added by competing manufacturers to merchandise such as or similar to the imported merchandise, or of the same general character as such merchandise, if such be in existence, to suffice in discharging the requirements of the statute. See *United States* v. *Arrow Upholstery Co., Inc.*, 24 Cust. Ct. 539, Reap. Dec. 7793; *United States* v. *Jovita Perez*, 36 C.C.P.A. (Customs) 114, C.A.D. 407; *Raylite Trading Co.* v. *United States*, 38 Cust. Ct. 753, A.R.D. 76. * * * [Emphasis copied.]

Having opted, in the incorporated case, to ignore the clear-cut directives set out in *Maier* on down through *Berben* for compliance with section 402a (f) (4) (and its predecessor), appellant now comes forward to assert that it has exercised due diligence, albeit unsuccessfully, in trying to ascertain the profits of the other producer of enamel cast iron ware in Belgium.

The sending of letters of inquiry some eight years after the merchandise was exported, and seven years after the appeal for reappraisement was transmitted to this court, does not, under the foregoing cir-

cumstances, strike us as a timely or diligent attempt to obtain the necessary profit information. Moreover, addressing such inquiries to the managing director of a firm which the writer *knew* had been liquidated, without any follow-up or even the shadow of an attempt to find out who had custody or control of the books and records of the Fonderie D'Audenarde, or who might make such information available, is not the kind of effort which can be regarded "as exemplifying the assiduity required by the courts." *N. M. Albert Co., Inc., et al.* v. *United States*, 62 Cust. Ct. 1029, 1034, A.R.D. 254 (1969).

On the record presented, appellant has not borne its burden of proof as to the profit component of cost of production. *A. N. Deringer, Inc., et al.* v. *United States*, 53 CCPA 135, C.A.D. 890 (1966). In view of the foregoing, we do not deem it necessary to consider the other matters raised in appellant's assignment of errors.

The findings of fact and conclusions of law of the trial judge respecting the six items herein, which we incorporate by reference, are affirmed. Judgment will be entered accordingly.